FILED

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

2014 JUN -5 P 4: 11

ROBERT BOSCH LLC,                                    )
a Delaware Limited Liability Company,                )
                                                     )
      Plaintiff,                                     )  Case No.  3:14CV415
                                                     )
v.                                                   )
                                                     )
WILLIAM C. SCHMIDT and TRICO PRODUCTS )
CORPORATION, a New York Corporation,                 )
                                                     )
      Defendants.                                    )
_____)

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

      Plaintiff Robert Bosch LLC ("Bosch") files this Complaint against defendants William C.

Schmidt and Trico Products Corporation ("Trico") seeking injunctive and other relief.

### Introduction

      1.     Defendant and former Bosch employee William C. Schmidt was a Senior Key

Account Manager in Bosch's Automotive Aftermarket Division until he tendered his resignation

on January 27, 2014.  For more than four years prior to his resignation, Schmidt was responsible

for managing the account of a single Bosch customer, Carquest Auto Parts ("Carquest").  On

Monday, January 27, 2014, Schmidt left Bosch to become a Director of National Accounts at

defendant Trico, a manufacturer and seller of windshield wiper blades and a direct and primary

competitor of Bosch in the more than $600 million windshield wiper aftermarket business.

      2.     Just hours before officially tendering his resignation, between 5:16 a.m. and

6:35 a.m. on January 27, 2014, Schmidt accessed sixteen separate files from the Bosch server

while working from home on his Bosch laptop.  Moments after accessing each file, it was copied

to his Maxtor One Touch III USB External Hard Drive ("External Hard Drive") while it was

connected to his Bosch laptop. During that same period of a little over an hour, Schmidt accessed a number of additional files on his External Hard Drive, most of which were moved, transferred or copied to the External Hard Drive that morning. Virtually all of the files accessed by Schmidt on January 27, 2014 were unrelated to the Carquest account for which he was responsible and Schmidt had no legitimate need to access any information just hours before announcing his resignation from the company.

3.      The files in question were placed by Schmidt into a folder that he created on his External Hard Drive on Thursday evening January 16, 2014, just eleven days prior to his resignation. In fact, during those last eleven days of his Bosch employment, Schmidt collected over sixty Bosch files on his External Hard Drive. The files that Schmidt placed in the folder on the External Hard Drive included pricing data, sales data, rebate information, agreements, inventory information, cost of manufacturing data, and other highly sensitive financial and marketing data relating to a number of customers other than Carquest. Moreover, virtually all of the information related to wipers, which was just one of the products that Schmidt sold at Bosch but the only product he would be responsible for at Trico. The information accessed by Schmidt would serve no legitimate purpose in connection with his responsibilities at Bosch, but it would have critical relevance to the accounts for which he was about to assume responsibility as a Director of National Accounts for Trico.

4.      Bosch and Trico are actively competing for wiper business from a number of customers. Bosch expects that critical purchasing decisions will be made by customers and potential customers of Bosch and Trico over the next several weeks or months. If Schmidt is not enjoined from managing the accounts of actual or potential customers of Trico that were the subject of the confidential and trade secret files Schmidt misappropriated and using the

2

confidential and trade secret information that he has stolen from Bosch, Bosch will be severely harmed in the marketplace.

## The Parties

5.      Bosch is a Delaware limited liability company with its principal place of business at 3800 Hills Tech Drive in Farmington Hills, Michigan.  Bosch is a manufacturer, distributor and supplier of wiper blades, among other products.  Currently, Bosch manufacturers and sells windshield wipers under the brand names ICON™, Evolution™ OE, Excel+, Micro Edge, DirectConnect and Clear Advantage.

6.      Schmidt is a former employee of Bosch who is a citizen and resident of the state of Virginia and who resides at 14084 Wiley Circle, Midlothian, Virginia.

7.      Defendant Trico is a New York corporation with its principal place of business at 3255 West Hamlin in Rochester Hills, Michigan.  Trico is a manufacturer, distributor and supplier of wiper blades.  Trico sells windshield wipers to original equipment manufacturers ("OEMs"), original equipment suppliers ("OES") of automotive vehicles, and the aftermarket under the brand names, among others, TRICO Exact Fit®, TRICO Force®, TRICO Flex®, TRICO Ice™ and TRICO Chill® wiper blades.

## Jurisdiction and Venue

8.      This Court has jurisdiction over Schmidt and the subject matter of this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

9.      This Court has supplemental jurisdiction over Trico and the state law claims for relief pursuant to 28 U.S.C. § 1367(a) since the additional party and these claims are so intertwined with and related to the federal claims for relief as to make an exercise of the Court's jurisdiction proper.

3

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).  A substantial part of the acts and omissions giving rise to Bosch's claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

### Factual Allegations

**A.     Bosch's Confidential and Trade Secret Information**

11.     The automotive parts market in the United States is highly competitive.  Factors affecting competition include product quality and features, innovation and development time, pricing and customer relationships.

12.     Bosch is the world's largest automotive supplier, providing a wide range of systems and components to OEMs and to the aftermarket.  Products manufactured by Bosch's Automotive Aftermarket Division include spark plugs, spark plug wire sets, oxygen sensors, ignition parts, oil, air and fuel filters, wiper blades and systems, brake pads and rotors, starters and alternators.

13.     Bosch's Automotive Aftermarket Division has been supplying wiper blades and systems to OEMs and the aftermarket for more than 80 years, and has wiper blades currently available for virtually every vehicle on the road.  Bosch markets and sells a wide range of wiper blades at various price levels through major channels of distribution to distributors, wholesalers, national retailers, automotive part retailers and repair shops.  Bosch's wiper blades are sold to national automotive aftermarket wholesalers, including Carquest, Advance Auto Parts, Inc. ("Advance"), NAPA Auto Parts ("NAPA"), Aftermarket Auto Parts Alliance ("AAPA") and its members and SSF Imported Auto Parts, LLC ("SSF"), as well as businesses that sell primarily at retail such as AutoZone, Inc. ("AutoZone"), Wal-Mart Stores, Inc. ("Walmart") and O'Reilly Automotive, Inc. ("O'Reilly").  AAPA is an association of 53 individual members that purchase

4

OEM products collectively.   In January 2014, the business of Carquest was purchased by Advance through its acquisition of General Parts International, Inc.

14.    Bosch is a leading manufacturer of wiper blades because of its development of innovative products, quality and portfolio of products, and the establishment of strong customer relationships.  It has pioneered some of the most advanced technologies in the wiper blade category by leveraging its original equipment product development capabilities and resources to service the aftermarket products.

15.    In order to grow its business and better serve its customers, Bosch spends significant time and substantial money developing value-added products, identifying and maintaining customer relationships, and designing and implementing customer-specific programs that meet its' customers needs.

16.    Bosch has developed and maintained valuable relationships and substantial goodwill with its customers.

17.    Bosch's confidential, proprietary and trade secret information is among the most important components in Bosch's success and reputation.

18.    Bosch's trade secrets include product development information, confidential competitive intelligence, pricing, margins, marketing strategies, sales data, customer information, future advertising and promotional plans and business strategies.  Bosch's trade secret information is not generally known in the industry and not readily ascertainable by proper means.

19.    Bosch's derives economic value from its trade secrets and confidential business and customer information not being publicly available.  Competitors of Bosch with improper access to Bosch's trade secrets and confidential information would gain a significant unfair

competitive advantage because it would allow Bosch's competitors to develop business, pricing and marketing strategies specifically designed to undermine Bosch in the marketplace. The acquisition of Bosch's trade secrets and confidential information by improper means poses a significant competitive threat because such information could be used to adversely impact Bosch's relationships with its customers.

20.     Bosch employs reasonable efforts to maintain the confidentiality and secrecy of its confidential and trade secret information. Bosch protects its confidential and trade secret business and customer information by, among other safeguards, limiting access to confidential, proprietary and trade secret information, restricting access to such information on its computers and computer networks, requiring employees to sign confidentiality agreements and regulating and monitoring the usage of its computers and computer networks.

21.     By way of example, Bosch employees are only granted access to confidential and proprietary information based on the employees' need to know such information in carrying out his or her duties. Bosch requires its employees to properly store, mark and secure such information. Secured storage includes, without limitation, physical security (*e.g.*, locked server rooms and offices), daily backup of data on a secured server, password protected screen savers and screen filters and periodic backup to a secure off-site storage facility. Some confidential information is required to be protected by encryption.

22.     In addition, certain information may be required to be marked as confidential or proprietary, be password protected and/or stored in restricted access directories or folders. In order for an employee to obtain access to restricted folders, he or she would be required to request authorization from the appropriate persons at Bosch and receive an e-mail approving access. Employees are also responsible for deleting confidential electronic files in accordance

6

with document management policies.

**B.**     **Schmidt's Employment at Bosch and His Agreements to Protect Bosch's Confidential and Trade Secret Information**

23.     With the exception of three intervening years, Schmidt worked for Bosch from March 1998 until January 27, 2014.  Schmidt held a variety of positions at Bosch including sales representative, National Account Manager and National Manager of Program Distribution, each with increasing responsibility.  Most recently, from April 2010 until the end of January 2014, Schmidt was a Senior Key Account Manager in Bosch's Automotive Aftermarket Division servicing the Traditional Channel, which sells to businesses that are principally wholesalers.  In that role, Schmidt was responsible for only one customer, Carquest.  Carquest is a supplier of replacement products, accessories, supplies and equipment for virtually all makes of automobiles, as well as light and heavy-duty trucks, off-road equipment, buses, recreational vehicles and agricultural equipment.

24.     As a condition of his employment, and at numerous times throughout his employment with Bosch, Schmidt executed documents in which he agreed to not disclose or misuse Bosch's confidential information both during and after his employment with Bosch.  Schmidt was provided access to Bosch's online Employment Handbook, and he executed a Handbook Receipts and Agreements on Confidentiality ("Confidentiality Agreements") agreeing to comply with the Company's policies and procedures.  The Confidentiality Agreements provided:

> I understand that during my employment with the company, I will have access to Company information, which is confidential.  Confidential Information includes, but is not limited to, the following:
>
> - Advance product plans,
> - Unpublished financial data,
> - Unannounced plant construction, expansion, or improvements,

- The amount of capital investment for new, expanded, or renovated facilities,
- Proposed product prices and warranties,
- Projected earnings
- Major upcoming changes in management, policy, or product,
- Data showing the composition of the workforce,
- Drawings, specifications, or operating characteristics of product or proposed product which have not been made public,
- Test data
- Manufacturing methods, and
- Information on suppliers' prices, quantities, and relations.

Confidential Information also includes all documents (and all copies of documents), things, or processes which are marked "Confidential," or which I am told are confidential, or which I have reason to believe are confidential.

All Confidential Information is the property of the Company. I will only use the Company's Confidential Information on a need to know basis for the purpose of benefiting the Company and will not use the Company's Confidential Information for myself or for third parties or divulge or convey it to third parties during my employment with the Company or after I have left the Company. Upon the termination of my employment, or at any other time the Company requests it, I will promptly deliver to the Company all Confidential Information which is in my possession or under my control, and I will not make or retain any copies of any Confidential Information. I understand that I shall not use Confidential Information for myself or third parties or disclose it to third parties even after I no longer work for the Company and this obligation includes any Confidential Information that I have memorized or might recall without the aid of reviewing a document.

25.      In addition, Schmidt was also provided a copy of Bosch's Computer Usage Policy (also referred to as Corporate Policy 115) and he executed Appendix C ("Computer Usage Agreement") in connection with that policy. In executing Bosch's Computer Usage Policy, Schmidt confirmed that he read and agreed with the policy including the following statements:

> 4.2 Associates shall not install or use any Computer Hardware (i.e., zip drives, tape backup, modems, etc.) without authorization by the Site Systems Manager.

* * * *

## 9. <u>Data Protection and Information Security</u>

Security refers to the protection of all Bosch owned assets in all forms, including but not limited to physical, intellectual, electronic or other formats.  Access rights must be limited to that data or applications the user needs for his/her work.

### 9.1   Storage, Marking and Encryption of Information

Confidential, strictly confidential and proprietary information must be properly stored, marked and secured at all times. Unauthorized access or disclosure of these classes of information is prohibited.

26.    Because Schmidt was responsible for a single account, Carquest, he had no legitimate business reason to access information relating to other customers.  The agreements and policies identified above prohibit employees from using or accessing Bosch information for which an employee does not have a legitimate need in connection with his or her work.

### C.    Schmidt's Misappropriation of Confidential and Trade Secret Information

27.    Based on information available to date without the benefit of discovery, it appears that Schmidt has been in communication with Trico since late October 2013.  Trico actively solicited Schmidt to leave his position at Bosch to become a Director of National Accounts at Trico.

28.    Upon information and belief, on January 16, 2014, Schmidt attached his External Hard Drive to his Bosch laptop while working from his home in Midlothian, Virginia.  The External Hard Drive used by Schmidt was not issued by Bosch or authorized by Bosch to be used with Bosch computers.  On that same date, Schmidt created a folder on his External Hard Drive that was called "New folder (6)."  Between January 16, 2014 and the time that Schmidt officially resigned from Bosch, he placed 60 Bosch files into "New folder (6)."  On January 17, 2014, Schmidt had a telephone conversation with a representative of Trico.

29.    On January 27, 2014, between 5:16 a.m. and 6:35 a.m., Schmidt accessed sixteen

9

files remotely on the Bosch server while working from home on his Bosch laptop. Just moments after accessing each file, the same file was then "created" on the External Hard Drive, meaning that Schmidt was copying the files, one by one, from the Bosch server onto his External Hard Drive. In all, Schmidt accessed nearly thirty Bosch files on his External Hard Drive during the early morning hours of January 27, 2014. Many files were "created" on the External Hard Drive that morning. More than thirty other files had already been copied to "New folder (6)" between January 16 and January 27, 2014. At about 9:20 a.m., he called his supervisor to advise him of his resignation. Later that morning, Schmidt sent a letter of resignation by e-mail.

30.    Upon tendering his resignation, and in accordance with the terms of the Confidentiality Agreement, Schmidt was required to return all Confidential Information in his possession. Schmidt was also asked to return all of Bosch's property as soon as possible, including his Bosch laptop, encryption code for the laptop, files, documents, and employee badge. On January 30, 2014, a Bosch employee met Schmidt to pick up his laptop and a box of other Bosch equipment and documents that Schmidt returned. On January 30, 2014, Schmidt did not return the External Hard Drive and did not advise the Bosch representative that he used the External Hard Drive just three days before to save confidential Bosch documents and information.

31.    On February 5, 2014, counsel for Bosch sent a letter to Schmidt reminding him of his confidentiality and other legal obligations to the company and putting him on notice that Bosch had obtained preliminary information suggesting that his obligations may have been breached. On Saturday, February 8, 2014, Schmidt appears to have sent his External Hard Drive to Bosch, together with three portable USB thumb drives in a package with no cover note and no indication that the USB devices were being returned. Even though Schmidt continued to be in

10

e-mail and telephone communication with Bosch representatives about post-employment issues during this time, he did not mention his return of the USB devices. The External Hard Drive and USB thumb drives were not located by Bosch until May 23, 2014.

32.   A forensic examination of Schmidt's Bosch laptop, External Hard Drive and three portable USB thumb drives revealed that Schmidt did not regularly connect external hardware to his Bosch computer. Specifically, an examination of two of the three USB thumb drives confirms that Schmidt never connected those devices to his Bosch laptop. The third USB thumb drive shows that Schmidt had not used that device with his company laptop since March 2013. Forensic analysis of the External Hard Drive reveals that, prior to January 2014, it was last connected to his laptop to create or save files in August 2012, almost a year and half before his departure from Bosch.

33.   Schmidt deleted over 1,700 files from the internal hard drive of his Bosch computer the day after he resigned. He never deleted the more than 60 confidential and trade secret Bosch files he saved on his External Hard Drive in January 2014.

34.   The files copied and accessed by Schmidt during the last days of his employment at Bosch contained critical business plans and customer and business analyses that contain very recent sales, pricing and marketing information, including the following:

(a)   confidential customer information relating to multiple key accounts for which Schmidt had no responsibility at Bosch, including pricing, rebates, promotions, commissions, purchasing histories, product returns, product mix, point of sale reports, proposals, market analysis, and forecasts;

(b)   confidential customer information unrelated to the Carquest account, including profitability analyses revealing actual and/or projected net sales, gross margins, cost of goods sold, SG&A expenses, operating income, payment terms, cost of capital, competitor lift funding, rebates, promotion, and other incentives;

(c)   confidential customer and potential customer presentations;

11

(d)    market research data collected by Bosch or obtained from third parties at considerable expense;

(e)    confidential agreements in effect between Bosch and a few of its customers;

(f)    the agreement in effect between Bosch and the agency that represents Bosch before a customer;

(g)    confidential correspondence between senior level Bosch employees and key customer accounts; and

(h)    confidential information concerning product development and new product releases.

The majority of these files related to business in which Schmidt was not involved at Bosch and for which he would have had no legitimate need, especially during his waning days and hours at Bosch.

35.    Some of the files that Schmidt accessed on the Bosch server on January 27, 2014, and that resided on his External Hard Drive when he accessed them on January 27, 2014, were obtained from restricted folders as to which Schmidt was not then authorized to have access or as to which he improperly obtained authorization to gain access. Once he resigned from Bosch, Schmidt was promptly cut off from further access to the Bosch servers.

36.    The information copied or accessed by Schmidt between January 16, 2014 and January 27, 2014 would give him and Trico a critical and unfair advantage in wiper negotiations with several of these customers. Armed with information about Bosch's pricing, costs of goods, costs of sales, inventories, profitability parameters, and future advertising and promotional plans, Trico and Schmidt would, in effect, be competing with Bosch with full access to Bosch's "playbook."

37.    Bosch has ongoing wiper negotiations with AAPA, AutoZone, Walmart and NAPA, among others, in which it is competing with Trico. On information and belief, Schmidt is responsible for some or all of these accounts at Trico.

12

38.     Schmidt's actions between January 16, 2014 and January 27, 2014 evidence an unmistakable intent to obtain unauthorized access to Bosch's confidential and trade secret information, and to misappropriate and wrongfully use that information on behalf of Trico. This conduct presents a clear and immediate threat that Trico, through its employee Schmidt, will use this information in selling competing wiper blades and, in so doing, cause significant competitive injury to Bosch.

**COUNT I**
**VIOLATIONS OF THE COMPUTER FRAUD**
**AND ABUSE ACT, 18 U.S.C. § 1030 (against Schmidt)**

39.     Bosch incorporates and realleges every allegation set forth above as if fully set forth herein.

40.     18 U.S.C. § 1030 establishes a private right of action for any person damaged by someone who knowingly or intentionally "accesses a protected computer without authorization, or exceeds authorized access[.]" *See, e.g.*, 18 U.S.C. § 1030(a)(2), (4), (6); 18 U.S.C. § 1030(g).

41.     The computer systems from which Schmidt obtained Bosch's confidential, proprietary, and trade secret information, as set forth above, are "protected computers" pursuant to 18 U.S.C. § 1030 in that they are computers used regularly and consistently by Bosch to conduct business and communicate throughout the United States and internationally.

42.     Authorization to access Bosch's computer systems is limited electronically through the use of electronic barriers and passwords that restrict employee access to information contained on its computer systems to that which is needed based on a given employee's role and/or position in the company. Further, Bosch's computer usage and IT security policies also limit an employee's authorization to access information contained on its computer systems to that information which an employee has a need to know in connection with his or her

13

employment at Bosch.

43.     Upon information and belief, Schmidt circumvented electronic barriers by, among other means, obtaining information and files that were located on secured network servers and to which Schmidt did not have authorized access.

44.     Schmidt also violated Bosch policy-based and contractual restrictions on his access to Bosch information when he gained unauthorized access to numerous confidential, proprietary and/or trade secret documents, as alleged herein, that he did not need-to-know to carry out his duties at Bosch.

45.     By engaging in the wrongful actions alleged herein, Schmidt knowingly, intentionally, and wrongfully obtained valuable information from the protected computers with the intent to defraud Bosch; used such protected computers for fraudulent purposes; and misappropriated valuable information belonging to Bosch from the protected computers.

46.     Bosch has been harmed by Schmidt's wrongful actions, including the impairment to the integrity, confidentiality, and availability of data, programs, systems and other information contained in the protected computers.  Bosch has incurred losses exceeding $5,000.00 in a one year period due to the costs of the forensic examinations of the Bosch laptop and multiple external storage devices, conducting damage assessments, lost revenue and other consequential damages incurred by Bosch related thereto.

47.     As result of the wrongful actions alleged herein, Bosch has no adequate remedy at law in that Schmidt continues to possess, disclose, and use confidential, proprietary, and trade secret information to benefit Trico, and such continued possession, disclosure and use will result in material and irreparable harm to Bosch's business if the actions are not enjoined, the exact nature, amount and extent of which is impossible to ascertain.

14

48.     Bosch is entitled to injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT II
## MISAPPROPRIATION UNDER THE VIRGINIA UNIFORM TRADE
## SECRETS ACT (VA. CODE ANN. § 59.1-336, *ET SEQ.*) (against both Defendants)

49.     Bosch incorporates and realleges every allegation set forth above as if fully set forth herein.

50.     Va. Code Ann. § 59.1-336 defines a "trade secret" as follows:

information including, but not limited to, a formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

51.     Conduct that constitutes "Misappropriation" includes:

1.      Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

2.      Disclosure or use of a trade secret of another without express or implied consent by a person who

    (i)     Used improper means to acquire knowledge of the trade secret;

    (ii)    At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

        (1)     Derived from or through a person who had utilized improper means to acquire it;

        (2)     Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (3)     Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

        (4)     Acquired by accident or mistake.

52.     The Defendants possess Bosch's valuable proprietary and trade secret information concerning, among other things, Bosch's relationships with its customers, pricing strategies, new product information, cost structures, margins, information regarding customer sales at the retail level, rebates offered by Bosch to certain customers, and market research data collected by Bosch or obtained from third parties at considerable expense.

53.     Schmidt improperly and unlawfully acquired, used and/or disclosed the trade secret information obtained from Bosch.

54.     Schmidt knew, before and at the time of his acquisition, use, and/or disclosure of Bosch's information, that the information constituted "trade secret" information.

55.     As set forth above, Bosch maintains the secrecy of its trade secret information through its use of Confidentiality Agreements and other reasonable limitations on access to such information.

56.     As a Bosch employee who signed a Confidentiality Agreement, Schmidt also had a contractual obligation, in addition to common law and statutory obligations and obligations pursuant to Bosch's policies, to maintain the secrecy of Bosch's trade secrets and limit its use. Trico was aware of those obligations.

57.     Schmidt knew that he acquired, used, and/or disclosed the trade secret information obtained and misappropriated from Bosch through improper means and knew that he had duties and obligations to maintain the secrecy of and limit the disclosure and use of such information.

58.     Trico, upon information and belief, knew or had reason to know that it acquired, used, and/or disclosed Bosch's trade secret information through improper means and knew that Schmidt had duties and obligations to maintain the secrecy of and limit the disclosure and use of

16

such information.   Trico knowingly and purposefully recruited Schmidt and placed him in a position in which he will use the trade secrets improperly accessed and acquired during his employment at Bosch, and Trico will benefit from this misuse of Bosch's trade secrets.

59.    In the alternative, Trico, by and through the conduct of Schmidt, acting in the scope of his new employment when he used Bosch's trade secrets, misappropriated Bosch's trade secrets under the doctrine of *respondeat superior*.

60.    The Defendants' acquisition, use, and/or disclosure of Bosch's trade secret information has been willful and malicious and intended to harm Bosch.   Defendants have done, and will continue to do, substantial and irreparable damage to Bosch's business by using Bosch's trade secrets to enable Trico to unfairly compete against Bosch.

61.    Unless Defendants are enjoined from using or disclosing Bosch's trade secrets, Bosch will suffer severe and incalculable losses and disadvantages in the marketplace.

62.    Unless Schmidt is enjoined from performing any work for customers or potential customers of Trico as to which Schmidt and Trico have obtained confidential and trade secret information from Bosch, Bosch will suffer severe and incalculable losses and disadvantages in the marketplace.

63.    Bosch does not have an adequate remedy at law.

64.    As a result of the Defendants' misappropriation of Bosch's trade secret information, Bosch has suffered, and will continue to suffer, damages.

## COUNT III
## BREACH OF FIDUCIARY DUTY OF LOYALTY (against Schmidt)

65.    Bosch incorporates and realleges every allegation set forth above as if fully set forth herein.

17

66.   By virtue of the employee-employer relationship that existed between Schmidt and Bosch, Schmidt had a duty to exercise the utmost good faith and loyalty toward Bosch and not act in a manner adverse to Bosch's interest.

67.   Schmidt breached his fiduciary duties to Bosch through the conduct alleged herein.

68.   Unless injunctive relief is granted, Bosch will be irreparably injured further.

69.   Bosch does not have an adequate remedy at law.

### COUNT IV
### BREACH OF CONTRACT (against Schmidt)

70.   Bosch incorporates and realleges every allegation set forth above as if fully set forth herein.

71.   As a condition of his employment at Bosch, Schmidt executed agreements in which he agreed to (a) not disclose or misuse Bosch's confidential and/or trade secret information and (b) not access Bosch's confidential and/or trade secret information unless he had a need-to-know and only with proper authorization.

72.   Those agreements are valid and enforceable agreements.

73.   Bosch has fully performed all of its obligations under the agreements.

74.   Schmidt breached his contractual obligations to Bosch through the conduct alleged herein.

75.   As a direct and proximate result of the breaches of his agreements, Bosch has been damaged.

WHEREFORE, Bosch respectfully requests that this Court grant judgment in its favor and against the Defendants as follows:

a.   actual damages that Bosch is entitled to recover as a result of the

18

Defendants' conduct;

b.      damages in the amount the Defendants have been unjustly enriched as a result of their misappropriation;

c.      punitive damages for Defendants' willful and intentional conduct;

d.      an equitable accounting, disgorgement, forensic recovery, forfeiture, and delivery to Bosch of all misappropriated information as well as all assets, income, profits, pecuniary benefits, and all illicitly obtained gains or profits resulting from the Defendants' conduct;

e.      injunctive relief enjoining Defendants from directly or indirectly using, disclosing, or disseminating  Bosch's confidential information and trade secrets;

f.      mandatory injunctive relief requiring Defendants to return to Bosch all of its confidential and trade secret information;

g.      injunctive relief enjoining Defendant William C. Schmidt from engaging in any activity relating to the sale of wiper blades for one year or in any activity relating to the actual or potential customers of Trico that were the subject of the confidential and trade secret files that Schmidt improperly accessed on or shortly before the day of his resignation;

h.      Bosch's attorneys' fees and costs;

i.      pre-judgment and post-judgment interest at the highest rates allowed by law; and

j.      all such other relief as this Court deems appropriate.

## JURY DEMAND

Robert Bosch LLC hereby demands a trial by jury on any triable issue by right.

Dated:  June 5, 2014

Respectfully submitted,

ROBERT BOSCH LLC,

By:_____
        One of its attorneys

19

Kimberly A. Taylor VSB #29823
KEPLEY, BROSCIOUS & BIGGS, PLC
2221 Pump Road
Richmond, VA 23233
Telephone: (804) 741-0400
Facsimile: (804) 741-6175
ktaylor@kbbplc.com

Stephen J. O'Neil
Amy S. Dolgin
K&L GATES LLP
70 W. Madison Street, Ste. 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000
stephen.oneil@klgates.com
amy.dolgin@klgates.com

Douglas W. Britt
K&L GATES LLP
4350 Lassiter at North Hills Avenue, Suite 300
Raleigh, NC 27609
Telephone: (919) 743-7300
Facsimile: (919) 743-7358
douglas.britt@klgates.com

## VERIFICATION

I, Bobby Bloom, am Senior Vice President of Automotive Aftermarket North America at Robert Bosch LLC. As provided by 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the factual statements set forth in Robert Bosch LLC's Verified Complaint for Injunctive and Other Relief are true and correct, except as to matters therein stated to be on information and belief and as to such matter I certify that I believe them to be true

Bobby Bloom