**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |
|---|---|
| ROBERT BOSCH LLC,<br><br>               Plaintiff,<br><br>        v.<br><br>WILLIAM C. SCHMIDT AND TRICO<br>PRODUCTS CORP.,<br><br>              Defendants. | 3:2014 cv 415 (JAG) |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

McGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................... 1

Statement of Facts .......................................................................................... 5

Argument ....................................................................................................... 14

I.      Likelihood of Success:  Bosch Cannot Demonstrate that Mr. Schmidt or Trico
        Breached a Duty, or that Mr. Schmidt Breached a Contract or Violated the Law ...... 14

        A.      Bosch is Not Likely to Succeed on its VUTSA Claim Because
                Mr. Schmidt Did Not Misappropriate a Trade Secret. ................................... 15

                1.      Trico Did Not Misappropriate Bosch's Trade Secrets ........................ 16

                2.      Mr. Schmidt Did Not Misappropriate Bosch's Trade Secrets ............. 17

        B.      Bosch Is Not Likely to Succeed on its Breach of Contract Claim
                Because It Has Not Shown a Contract or a Breach Thereof ........................... 18

        C.      Bosch Has Not Tried to Show, and Cannot Show, a Likelihood of
                Success on Its CFAA Claim ............................................................................. 20

II.     Irreparable Harm:  Bosch Has Not Shown and Cannot Show that Trico Has
        Any of Bosch's Confidential Information .................................................................. 21

III.    Balance of the Equities: Bosch's Application Could Put Mr. Schmidt Out of
        Work, Harm Trico's Business, and Give Bosch a Competitive Advantage ................ 23

IV.     The Public Interest:  Any Public Interest Here Favors Mr. Schmidt and Trico .......... 25

V.      Mandatory Relief:  Bosch's Request for Mandatory Relief Should be Denied .......... 25

Conclusion ..................................................................................................... 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ancora Capital & Mgmt. Grp., LLC* v. *Gray*,
    55 Fed. App'x. 111 (4th Cir. 2003) ..............................................................25

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ......................................................................................21

*Audio-Video Grp., LLC* v. *Green*,
    No. 1:14CV169, 2014 WL 793535 (E.D. Va. Feb. 26, 2014)...........15, 18, 24

*Bell Atlantic Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ......................................................................................21

*BP Products N. Am. Inc.* v. *Southside Oil*, *L.L.C.*,
    No. 3:13-CV-718-JAG, 2013 WL 6493598 (E.D. Va. Dec. 10, 2013) ........22

*Calvary Christian Ctr.* v. *City of Fredericksburg*,
    800 F. Supp. 2d 760 (E.D. Va. 2011) ..........................................................25

*Ciena Corp.* v. *Jarrard*,
    203 F.3d 312 (4th Cir. 2000) ........................................................................25

*Cornwell* v. *Sachs*,
    99 F. Supp. 2d 695 (E.D. Va. 2000) ......................................................14, 15

*Fidelity Global Brokerage Grp., Inc.* v. *Gray*,
    No. 1:10-cv-1255, 2010 WL 4646039 (E.D. Va. Nov. 9, 2010) ..................25

*Harvey* v. *Showalter*,
    No. 3:12-CV-00650-JAG, 2012 WL 5449731 (E.D. Va. Nov. 7, 2012) ......21

*Heidelberg USA, Inc.* v. *TD Global Grp., LLC*,
    No. CIV. 06-10148, 2006 WL 177318 (E.D. Mich. Jan. 23, 2006) .............20

*Home Funding Grp., LLC* v. *Myers*,
    No. 1:06-cv-1400 (JCC), 2006 WL 6847953 (E.D. Va. Dec. 14, 2006) ......25

*Lydo Enterprises* v. *City of Las Vegas*,
    745 F.2d 1211 (9th Cir. 1984) ......................................................................23

*MicroStrategy Inc.* v. *Bus. Objects, S.A.*,
    331 F. Supp. 2d 396 (E.D. Va. 2004) ..........................................................16

*Natural Organics, Inc.* v. *Proteins Plus, Inc.*,
   724 F. Supp. 50 (E.D.N.Y. 1989) ...................................................................15

*Newport News Indus.* v. *Dynamic Testing, Inc.*,
   130 F. Supp. 2d 745 (E.D. Va. 2001) ............................................................16

*Perry* v. *Judd*,
   840 F. Supp. 2d 945 (E.D. Va. 2012) ............................................................14

*Physicians Interactive* v. *Lathian Sys., Inc.*
   No. CA 03-1193-A, 2003 WL 23018270 *10 (E.D. Va. Dec. 5, 2003)........................16

*Quince Orchard Valley Citizens Ass'n* v. *Hodel*,
   872 F.2d 75 (4th Cir. 1989) ...........................................................................22

*SBM Site Servs., LLC* v. *Garrett*,
   No. 10-CV-00385-WJM-BNB, 2011 WL 7563785
   (D. Colo. June 13, 2011) ................................................................................14

*Software Testing Solutions, Inc.* v. *United States*,
   58 Fed. Cl. 533 (Fed. Cl. 2003) .....................................................................22

*Title Trading Servs. USA, Inc.* v. *Kundu*,
   No. 3:14-CV-225-RJC-DCK, 2014 WL 1765128, at *4
   (W.D.N.C. May 2, 2014) ................................................................................24

*UBS Fin. Servs. Inc.* v. *Carilion Clinic*,
   880 F. Supp. 2d 724 (E.D. Va. 2012) ......................................................14, 21

*Vienna Metro LLC* v. *Pulte Home Corp.*,
   786 F. Supp. 2d 1076 (E.D. Va. 2011) ..........................................................18

*WEC Carolina Energy Solutions LLC* v. *Miller*,
   687 F.3d 199 (4th Cir. 2012) ...................................................................20, 21

**Statutes**

28 U.S.C. § 1367(c)(2) ....................................................................................20

Va. Code Ann. § 59.1-336 (2009) ..............................................................15, 16

Defendants William C. Schmidt ("Schmidt") and Trico Products Corp. ("Trico") respectfully submit this memorandum of law in opposition to the application of plaintiff Robert Bosch LLC ("Bosch") for a temporary restraining order.

### Preliminary Statement

This purports to be a lawsuit about theft of trade secrets. It is not. This is an attempt to get settlement leverage in a patent litigation between Bosch and Trico that is pending in Illinois, a lawsuit that Bosch never mentions in its papers before this Court. *See Robert Bosch LLC* v. *Trico Products Corporation, et al.*, Case No. 12 CV 437 (N.D. Ill.) (the "Patent Case"). Before a settlement meeting of the parties in that case, Bosch announced that it would be bringing this lawsuit against Mr. Schmidt and Trico. Trico attempted to persuade Bosch that it was digging in a dry hole, apparently to no avail.

Mr. Schmidt left Bosch's employ on January 27, 2014 after a long, loyal, and unsullied career. He began work for Trico on February 17, 2014. Bosch alleges that he downloaded Bosch computer files to an external hard drive on January 16 and January 27, 2014, that he did so to give those files to Trico, and that he must in fact have done so. There is no evidence to support those charges, and conclusive evidence disproving them.

The undisputed evidence shows that: (i) Mr. Schmidt backed up certain files on January 16, 2014, before he even had an offer of employment from Trico, as part of his practice of backing up files that he used in his work for Bosch; (ii) he downloaded certain other files on January 27, 2014, the day he submitted his resignation to Bosch, to collect in one place files that would be useful to his successor at Bosch; and (iii) he had good reason to do so, because his successor is somewhat older than Mr. Schmidt, does not have the computer skills to find such files readily on the Bosch system, and has sought out similar information from at least one other former Bosch employee after his departure.

1

Consistent with his goal of helping his successor at Bosch, shortly after leaving Bosch—and well before beginning work at Trico—Mr. Schmidt emailed his Bosch Human Resources representative to tell her that he had certain items that might be useful to his successor.  He then immediately sent the hard drive and other Bosch property to her by two-day priority mail.  He did not access, print, or copy any files on the hard drive between leaving Bosch and returning the device.  When he returned the hard drive, he left himself without any copies of those files, which he would no longer need.

The only Bosch documents that Mr. Schmidt has shared with Trico are his confidentiality agreements with Bosch, which he shared immediately upon arriving at Trico so that everyone would know of his obligations.  He has adhered to those obligations.  He has not revealed any confidential Bosch information to anyone at Trico or used any such information in his work for Trico.  In response to this motion, and as detailed in the sworn declaration of Trico's information technology manager, Trico has conducted an exhaustive search of its email system, its servers, and the individual computers of employees with whom Mr. Schmidt interacts (and Mr. Schmidt's own Trico computer).  Bosch has identified the files that Mr. Schmidt supposedly stole.  Trico does not have a single one of them.

That is the undisputed evidence.

What is also undisputed is the evidence of Bosch's delay, of its use of this lawsuit as a settlement tactic, and of its use of Mr. Schmidt as a pawn.  Bosch first informed Mr. Schmidt that it believed he might have misappropriated confidential Bosch information on February 5, 2014.  Bosch has never revealed whether the vague allegations that are set forth in that February 5th letter involve the matters on which Bosch now bases its claim.  And Bosch did not undertake an examination of Mr. Schmidt's computer until at least April 1, 2014, when a scheduled mediation session in the Patent Case was looming.  Bosch did not

raise with Trico any concern about alleged misappropriation until after that mediation session had concluded on April 22, 2014.  Bosch next raised the subject on the morning of the next mediation session in the Patent Case on May 16, 2014, when Bosch stated that it planned to sue Trico and Mr. Schmidt the same day and, for the first time, demanded the return of Mr. Schmidt's external hard drive.  Trico's counsel informed Bosch that Mr. Schmidt could not return the external hard drive, because he had already done so.  Bosch had the drive for three months at that point.

In these circumstances there is no basis whatsoever for the "extraordinary" remedy of a temporary restraining order or to enter a preliminary injunction.

*First*, Bosch cannot demonstrate a clear likelihood of success on the merits, as it must.  Bosch rests its motion for a temporary restraining order on its claims for violation of the Virginia Uniform Trade Secrets Act ("VUTSA") and for breach of contract, and those claims are meritless.  There has been no violation of the VUTSA.  There has been no breach of contract.  There will be no violation.  There will be no breach.  Indeed, Mr. Schmidt returned to Bosch, and Trico never had, the confidential documents about which Bosch claims to be concerned.  Of course, neither a VUTSA claim nor a breach-of-contract claim could bring these non-diverse parties before this Court. (Trico and Bosch are both headquartered in Michigan.)  The sole basis for subject matter jurisdiction here is a claim against Mr. Schmidt under the Computer Fraud and Abuse Act ("CFAA"), and Bosch barely mentions that claim in its moving papers.  That claim is not even adequately pled, much less supported by any evidence, making it unlikely that this Court would ultimately grant relief on any of Bosch's claims.

*Second*, because neither Mr. Schmidt nor Trico is in possession of any confidential Bosch information, there is no possibility that Bosch will be injured—much less

that Bosch faces imminent and irreparable harm—in the absence of a temporary restraining order.  Indeed, any claim of imminent irreparable injury is belied by the relaxed pace at which Bosch investigated its purported claims in the four months from February 5, 2014 until it filed this lawsuit on June 5, 2014.  We acknowledge an agreed one-week tolling period from May 16, 2014 to May 23, 2014, but a sixteen-week period of delay (as opposed to a full four months) is hardly the act of a genuinely concerned former employer, and is no response to a defense of laches.

*Third*, issuance of a temporary restraining order would cause Mr. Schmidt and Trico substantial and irreparable injury, potentially depriving Mr. Schmidt of his livelihood and crippling Trico in its sales to a large segment of its customers.

*Fourth*, given that the undisputed evidence establishes that there has been no wrongdoing by either Mr. Schmidt or Trico, issuance of a temporary restraining order cannot possibly serve any public interest.

*Finally*, even if the present record could support a temporary restraining order—and it cannot—it still could not possibly justify the mandatory relief that Bosch seeks.  Bosch is not seeking to preserve the status quo.  Bosch wants Trico to copy its computer files and servers and hand them over to an expert working for Bosch, a fierce competitor, so that Bosch's expert can review Trico's communications, prices and analyses regarding the very customers for whom Bosch and Trico compete.  To require Trico to freeze its computers and servers, make a forensic image of its files, and hand those files over to Bosch's expert would do nothing other than give Bosch a competitive advantage—precisely the risk that it complains, wrongly, that Schmidt and Trico pose to Bosch.

For all these reasons, as more fully detailed below, Bosch's application for a temporary restraining order should be denied in its entirety.

## Statement of Facts

Bosch's motion papers tell only the smallest part of a larger story, detailing and cataloguing the files that Mr. Schmidt downloaded.  That he downloaded files is undisputed.  In opposition to Bosch's motion, Trico is today filing declarations from Mr. Schmidt, from the Trico employees with responsibility for pricing and other strategies with respect to the customer accounts identified in Bosch's motion papers (Rick Stempien, Tracy Beecroft, Andrew Conroy, James Croston, and Danielle Orlando), from the Trico employee responsible for confirming that Trico has none of the files about which Bosch complains (Bethany Willick), and from Trico's outside counsel in the Patent Case (Damien Kieran) and this case (Daniel Leffell).  For the Court's convenience, we annex all of those declarations and their respective exhibits to the declaration of Michael Klunder.

## The Patent Case and Bosch's Search for Leverage

Bosch and Trico have been engaged for several months in a mediation to try to settle the Patent Case, an unrelated lawsuit involving allegations of patent infringement.  The claims before this Court are just the latest effort from Bosch to obtain settlement leverage by leveling unfounded allegations that Trico misappropriated confidential Bosch information.

On April 22, 2014, Bosch informed Trico that it believed Trico used confidential Bosch information in connection with sales to  Carquest, a customer for which Mr. Schmidt had responsibility while at Bosch.  Bosch asked Trico to investigate.  (Klunder Ex. 7[1] ("Kieran Decl.") ¶ 3.)  At the same time, Bosch asserted that it was suspicious of Mr. Schmidt's supposed failure to provide Bosch with the password for his computer.  (Kieran Decl. ¶ 3.)  In fact, Mr. Schmidt has never had anything to do with the Carquest

---

[1]   All citations in the format "Klunder Decl. ¶ __" are to the Declaration of Michael Klunder in Support of Defendants' Opposition to Plaintiff's Application for a Temporary Restraining Order ("Klunder Declaration").  All citations in the format "Klunder Ex. __" are to the exhibits to the Klunder Declaration.

account at Trico.  (Klunder Ex. 2 ("Stempien Decl.") ¶ 15.)   And, as described in detail below, Mr. Schmidt had given the computer password to Mr. Christopher Thompson of Bosch in writing on January 30, 2014.  He did so precisely as directed by Bosch, which Mr. Thompson verified.  Bosch has never raised that supposed concern again.

Bosch never even asked Trico's counsel what the results had been of the Carquest internal investigation Bosch asked Trico to conduct.  Instead, on May 16, 2014, Bosch announced that it intended to sue Trico that day based on its Carquest allegations, and announced that a forensic analysis of Mr. Schmidt's Bosch laptop—which Mr. Schmidt had dutifully returned to Bosch more than three months earlier—showed that he had downloaded unspecified confidential files to an external hard drive on the day he left Bosch.  The parties agreed to a one-week standstill to negotiate a possible exchange of information relating to Bosch's allegations.  (Klunder Ex. 8 ("Leffell Decl.") ¶¶ 2–3.)  In that regard, Bosch asked that Trico return the external hard drive to which Mr. Schmidt had downloaded the Bosch files.  In fact, Bosch already had the external hard drive; as we describe in detail below; Mr. Schmidt had returned the drive to Bosch before he even joined Trico.

In telephone communications shortly thereafter, Trico learned that Bosch mistakenly believed that Mr. Schmidt is responsible for the Carquest account at Trico. (Leffell Decl. ¶ 4.)  Trico informed Bosch that he is not responsible for Carquest.  To stem off further unfounded accusations, Trico asked that Bosch identify "any account other than Carquest as to which Bosch claims Trico has improperly used confidential or proprietary Bosch information."  (*Id.* ¶ 5.)  Trico also advised Bosch that it could not provide the requested external hard drive, because Bosch already had it, and had it for three months by that point.  (*Id.*)  Finally, Trico advised Bosch that Mr. Schmidt did not access anything on

that external hard drive after leaving Bosch, and encouraged Bosch to conduct an examination of the drive.  (Klunder Ex. 14.)

Bosch responded by switching to a new theory, asserting that it has "reason to believe that [Mr. Schmidt] misappropriated information relating to customers for which he does have responsibility at Trico."  (Leffell Decl. ¶ 6; Klunder Ex. 15.)   Bosch ignored Trico's request that it identify those customers.  After approximately two weeks of silence, Bosch filed this lawsuit and moved for a temporary restraining order and preliminary injunction.  Bosch did not mention the Patent Case in its papers.  Instead, what Bosch did was level wildly inaccurate, misleading, incomplete and false accusations at a loyal former executive.  We describe and respond to those allegations below.

## Mr. Schmidt Leaves Bosch to Work for Trico

In October 2013, Tracy Beecroft, Trico's Regional Director of sales for the Eastern Region, contacted Mr. Schmidt, then a Bosch employee, to inquire if he might be interested in moving to Trico.  (Klunder Ex. 3 ("Beecroft Decl.") ¶ 5.)   In the past, Ms. Beecroft had worked with Mr. Schmidt at Bosch for 15 years, and, now at Trico, she thought he would be a good fit for the position of Regional Director of Sales for the Eastern Region.[2] (*Id.* ¶¶ 2, 5.)  Mr. Schmidt was interested, and after interviewing with senior Trico executives, he was offered the position, which he accepted.  Mr. Schmidt had worked at Bosch for virtually his entire career, beginning in March 1998.  (Cplt. ¶ 23.)  There is no allegation that he was anything other than a loyal Bosch employee throughout that period.

---

[2]   In October 2013, Ms. Beecroft was the Regional Director of Sales for the Eastern Region. When Mr. Schmidt joined Trico in February 2014, Ms. Beecroft transitioned to the Central Region, and Mr. Schmidt assumed the role of Regional Director of Sales for the Eastern Region.  (Beecroft Decl. ¶ 8.)

**Downloads to Mr. Schmidt's Bosch Authorized Device on January 16 and 27, 2014**

As alleged by Bosch, between January 16, 2014, and January 27, 2014, the day he submitted his resignation to Bosch, Mr. Schmidt downloaded 60 Bosch files onto an external hard drive. (Cplt. ¶ 28–29.)  Mr. Schmidt placed those files in a folder labeled "New Folder (6)," which Mr. Schmidt had created on January 16. (*Id.*)  On the morning of January 27, 2014, Mr. Schmidt copied 16 Bosch files to the external hard drive and accessed "nearly thirty" Bosch files on that drive. (*Id.* ¶ 29.)

In its pleading, Bosch says that the hard drive "was not issued by Bosch or authorized by Bosch to be used with Bosch computers." (Cplt. ¶ 28.)  As Mr. Schmidt explains in his declaration, that is wrong.  The hard drive was authorized and paid for by Bosch. (Klunder Ex. 1 ("Schmidt Decl.") ¶ 18.)  For several years, Mr. Schmidt had used the hard drive to back up his Bosch laptop. (Schmidt Decl. ¶¶ 3, 18.)  Consistent with that practice, on January 16, before he received an offer from Trico, Mr. Schmidt's created New Folder (6), and saved files to that location from his laptop. (*Id.* ¶ 20.)

The only subsequent occasion on which Mr. Schmidt recalls saving files to the hard drive was on January 27th, the day he resigned from Trico. (*Id.* ¶ 19.)  As he explains at length in his declaration, he did so to create a central repository of important files for his manager, Ed Schroeter, to whom Mr. Schmidt transitioned his responsibilities. (*Id.* ¶¶ 23–28.)  Mr. Schmidt had good reason to create that repository.  At the time, Mr. Schroeter had been with Bosch for only approximately 18 months, was unfamiliar with large corporate environments, and was unsophisticated with respect to Bosch's computer systems. (*Id.* ¶ 24.)  Before his resignation, Mr. Schmidt had told Mr. Schroeter that he was considering leaving Bosch, and Mr. Schroeter asked him to take calls and answer questions after his departure. (*Id.*)  Further, Mr. Schmidt understood that Mr. Schroeter, his manager, had needed similar

8

assistance in the past.   When a former colleague had left Bosch, Mr. Schroeter found it difficult to assume that person's responsibilities and had frequently called that person for help.  (*Id.* ¶ 25.)  Mr. Schmidt thus expected that Mr. Schroeter would need help following his departure.   Those expectations have proven true:   Mr. Schroeter has since contacted Mr. Schmidt on several occasions, including for assistance locating files on the Bosch network. (*Id.* ¶ 27.)

It was in anticipation of those requests that Mr. Schmidt downloaded files to New Folder (6) from the Bosch network on January 27, 2014.  Bosch accuses Mr. Schmidt of obtaining these files from restricted folders that he was not allowed to access, although it provides absolutely no evidence of this.  (Cplt. ¶ 35.)  Mr. Schmidt flatly denies this charge, and testifies that he understood he was authorized to access the files that he downloaded, and that he did so using his own login credentials.  (Schmidt Decl. ¶ 12.)  He did not use anyone else's user name or password, nor did he otherwise circumvent any computer security measures to do so.  (*Id.*)

Bosch's allegation that Mr. Schmidt had no legitimate business reason to access files relating to accounts other than the specific accounts he covered is simply wrong. Part of Mr. Schmidt's responsibilities involved proposing pricing, discounts, and promotional programs that Bosch might implement with the accounts that he covered.  (*Id.* ¶ 10.)  To do so effectively, Mr. Schmidt—like other Bosch account managers—often looked at pricing, discounts, and promotional programs that Bosch had successfully implemented with its other major customers.  (*Id.*)

Of critical importance in a theft-of-secrets claim, Mr. Schmidt did not copy or print any of the documents on the external hard drive, nor did he make any notes about their

contents.  (*Id.* ¶ 5.)  Nor did he access them at any time after January 27, 2014, the day he left

Bosch.  (*Id.*)

## **Mr. Schmidt's Departure**

The next day, January 28, 2014, Sarah DiGregorio of Bosch's Human

Resources department emailed Mr. Schmidt a list of items he was required to return to Bosch,

as follows:

- Laptop
- ID Badge
- Keys — building, office, desk, etc.
- Files or documents (we discussed the most recent 12
  months of paper docs and anything else you feel we
  would find as pertinent)
- Credit Card
- Calling Card
- Fax, Projector, Cell Phone
- Encryption Code of Laptop:
- Automobile (keys, etc.) —Sue DuBois will contact you
- Parking Tag

(*Id.* ¶ 36; Klunder Ex. 10.)  Accordingly, in consultation with Ms. DiGregorio, Mr. Schmidt

made arrangements to deliver Bosch property in his possession to Mr. Christopher Thompson,

a Bosch representative who lived near him, on the afternoon of January 30, 2014.  (Schmidt

Decl. ¶ 36.)  Mr. Schmidt confirmed those arrangements prior to January 30, 2014, with both

Mr. Thompson and Ms. DiGregorio.  On the morning of January 30, 2014, Mr. Schmidt

received an email from Ms. DiGregorio, in which she stated "I received your voicemail, and

that's fine for you to give Chris boxes of company property for him to send to Broadview."

(Schmidt Decl. ¶ 37; Klunder Ex. 10.)

Later that morning, however, Mr. Schmidt was bombarded with telephone

messages from three different Bosch employees, including Ms. DiGregorio and

Mr. Thompson, instructing him in an urgent tone that he must return all Bosch materials

immediately, rather than the afternoon of the same day.  (Schmidt Decl. ¶ 38.)  Mr. Schmidt

contacted Mr. Thompson and agreed to meet at Mr. Schmidt's home immediately thereafter to

hand over the materials.  (*Id.*)  Mr. Thompson made it clear that someone at Bosch, senior to

him, was displeased that the Bosch materials had not yet been returned.  (*Id.*)

Mr. Schmidt drove home, where he met Mr. Thompson.  (*Id.* ¶ 39.)  Although

it was cold outside and he was standing in snow, Mr. Thompson declined an invitation to wait

inside while Mr. Schmidt gathered the materials, opting instead to wait in Mr. Schmidt's

driveway.   While Mr. Thompson waited outside, Mr. Schmidt went through the checklist

provided by Ms. DiGregorio and collected all the items in the order they were listed.  (*Id.*)  He

then put them in a box, which he handed to Mr. Thompson in his driveway, and

Mr. Thompson signed a print-out of the checklist, noting that he had received the listed items.

(*Id.*)   In the haste that Bosch imposed, and somewhat unnerved by the unexplained

threatening tone adopted by Bosch employees, Mr. Schmidt did not provide other Bosch

materials that were not on the list.  As he explains in his declaration, he was "quite rattled by

the hostile voicemails and phone calls" and by Bosch's treatment of him, and was also

somewhat distracted by a dire health situation involving his father.  (*Id.* ¶ 41.)  Among the

materials he did not immediately return that day were the middle-seat headrest and cargo

cover for his company car, a portable WiFi device, three USB drives, and the external hard

drive on which Bosch's motion focuses.  (*Id.* ¶ 41.)

**Mr. Schmidt Returns the External Hard Drive to Bosch Without Having Accessed It**

By February 5, 2014, Bosch apparently believed it had grounds for asserting

that Mr. Schmidt had misappropriated proprietary Bosch information.   A Bosch attorney

wrote to Mr. Schmidt on that date, noting that Mr. Schmidt was  bound by the confidentiality

agreements he signed while at Bosch, and stating that:

> Bosch has obtained information which suggests that you may
> have violated these ongoing confidentiality obligations with
> respect to information regarding a current business opportunity
> for Bosch that your new employer has become aware of. We
> believe that such awareness on their part could not otherwise
> have become known to them other than through disclosure by
> you.

(*Id*. ¶¶ 44–45; Klunder Ex. 11.)   Bosch has never revealed whether this alleged violation

forms any part of the basis for the relief Bosch seeks in this Court.

Upon receiving this letter, Mr. Schmidt searched his home for any Bosch

materials he may have neglected to include in the materials he had given to Mr. Thompson

on January 30, 2014. (Schmidt Decl. ¶ 47.) He found the three USB drives and the external

hard drive and, on February 8, 2014, he emailed Ms. DiGregorio to tell her that:

> I was cleaning out my office and found some items that could
> be useful to whomever is taking over my accounts. These
> weren't on the list and in the rush to get the materials to Chris
> (you, he and Sue were calling me repeatedly while I was out
> over a 45 min period to get the transfer completed right away)
> they were overlooked.

(*Id.*; Klunder Ex. 11.)   That day, he sent the four storage devices to Ms. DiGregorio via two-

day priority mail. (Schmidt Decl. ¶ 48.) Bosch received the package on February 10, 2014.

Bosch now claims that Mr. Schmidt sent these devices "with no prior notice"

(Pl. Mem. at 6) and that they "were not located by Bosch until May 23, 2014." (Cplt. ¶ 31.)

The first charge is simply false: Mr. Schmidt specifically emailed Ms. DiGregorio about

"items that could be useful to whomever is taking over my accounts" before he sent the drive

to her. If the second statement is true—if Bosch really did not find the drive for another three

and a half months—it is as inexplicable as it is unexplained. Indeed, Bosch admits knowing

about the external hard drive since at least early April 2014. (*See* Declaration of Brandon

Fannon in Support of Pl's Mot. ("Fannon Decl.") ¶¶ 4, 6(a), ECF No. 3-1.) In a motion that

12

as a matter of law requires expediency, Bosch offers no explanation for why it failed to "locate" the device before May 23, 2014.  It had the drive the whole time.

**<u>Trico Does Not Have, and Has Not Used, Any Bosch Confidential Information</u>**

Mr. Schmidt began work at Trico on February 17, 2014.  That was three weeks <u>after</u> he last accessed any Bosch information, and a week after he returned the external hard drive.  Aware of Bosch's concerns and of his obligations to Bosch, on his first day at Trico he informed Trico senior executives of the February 5, 2014 letter from Bosch and of his confidentiality obligations to Bosch.  (Stempien Decl. ¶ 10.)  On March 5, 2014 he circulated to senior Trico personnel a copy of the February 5, 2014 letter from Bosch and copies of his confidentiality agreements with Bosch.  (Schmidt Decl. ¶ 56; Klunder Ex. 13.)

Trico is today submitting declarations from five key members of Trico's sales management team.  They collectively oversee the particular strategies and cover the specific customer accounts to which Bosch contends its supposedly-purloined data relate.  (Stempien Decl. ¶ 4; Beecroft Decl. ¶ 4; Klunder Ex. 4 ("Croston Decl.") ¶ 4; Klunder Ex. 5 ("Conroy Decl.") ¶ 4; Klunder Ex. 9 ("Orlando Decl.") ¶ 4.)  Those declarations establish that Mr. Schmidt has not divulged any confidential Bosch information to Trico and has not used any such information for any purpose while employed by Trico.  In addition, Trico has conducted an exhaustive search of all Trico emails, servers, relevant personal computers and external storage devices.  As Trico's Bethany Willick testifies, this search uncovered not a single copy of any file referred to in Bosch's Complaint or moving papers.  (Klunder Ex. 6 ("Willick Decl.") ¶¶ 6–18.)  Trico does not have the files.

This is a theft-of-trade-secrets and breach-of-contract case in which no trade secrets were stolen and no contract was breached.  The basis for federal jurisdiction is an alleged violation of an anti-hacking statute, but no computer was hacked.  The facts alone are

sufficient to deny Bosch's motion.   As we show below, however, the law provides only additional reasons to deny that motion.

<u>Argument</u>

Temporary restraining orders and preliminary injunctions are "extraordinary remedies," which may be granted "only sparingly."  *UBS Fin. Servs. Inc.* v. *Carilion Clinic*, 880 F. Supp. 2d 724, 728 (E.D. Va. 2012) (quoting *In re Microsoft Litig.*, 333 F.3d 517, 524 (4th Cir. 2003)), *aff'd*, 706 F.3d 319 (4th Cir. 2013)).   To avail itself of this extraordinary remedy, Bosch must establish that (1) it is likely to succeed on the merits at trial; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest.  *Id.*  (citing *Winter* v. *Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)).   Bosch bears the burden of proving that each factor supports granting relief.  *Id.*   It fails to establish a single one.

I.   **Likelihood of Success:  Bosch Cannot Demonstrate that Mr. Schmidt or Trico Breached a Duty, or that Mr. Schmidt Breached a Contract or Violated the Law**

In the ordinary course, temporary or preliminary injunctive relief preserves the status quo.   To obtain that relief, Bosch must make a "clear showing" that it will likely succeed at trial on the merits of its claims.  *UBS Fin. Servs. Inc.*, 880 F. Supp. 2d at 728. Here, Bosch goes further, and seeks mandatory relief that "alters the status quo by commanding or requiring a party to perform a positive act," *Perry* v. *Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va. 2012), in an order compelling Trico to provide data to Bosch.   To obtain that mandatory relief, Bosch must meet an even more exacting standard: the "existence of a clear and convincing probability of success."   *Cornwell* v. *Sachs*, 99 F. Supp. 2d 695, 704 (E.D. Va. 2000).   There is no dispute that requiring an employer to deliver trade secrets, and even to prevent access to them, is a request for mandatory relief.  *See SBM Site Servs., LLC* v. *Garrett*, No. 10-CV-00385-WJM-BNB, 2011 WL 7563785, at *3 (D. Colo. June 13, 2011);

*Natural Organics, Inc.* v. *Proteins Plus, Inc.*, 724 F. Supp. 50, 54 (E.D.N.Y. 1989).  Where, as here, "the request for preliminary relief encompasses both an injunction to maintain the status quo and to provide mandatory relief . . . the two requests must be reviewed separately, with the request for mandatory relief being subjected to a more exacting standard of review." *Cornwell*, 99 F. Supp. 2d at 704 ((quoting *Tiffany* v. *Forbes Custom Boats, Inc.*, 959 F.2d 232, at *7 (4th Cir. 1992)).

Bosch pleads four claims in its complaint, but relegates two of them to a footnote on this motion and relies on the other two.  Bosch all but ignores its First Cause of Action, against Mr. Schmidt, for violations of the Computer Fraud and Abuse Act ("CFAA").  Bosch also neglects its Third Cause of Action, against Mr. Schmidt, for breach of the duty of loyalty.  Bosch's motion instead focuses on its Second Cause of Action, which asserts a claim against both defendants for misappropriation of trade secrets under the VUTSA, and its Fourth Cause of Action, which asserts a claim against Mr. Schmidt for breach of contract.  Bosch does not have any substantial likelihood of success on either of these claims.  Moreover, because subject matter jurisdiction is predicated on the CFAA claim, Bosch's likelihood of success on that claim is highly relevant to its prospects for success on its state-law claims; and Bosch has not even stated a claim under CFAA, much less adduced evidence demonstrating any likelihood of success.

### A.    Bosch is Not Likely to Succeed on its VUTSA Claim Because Mr. Schmidt Did Not Misappropriate a Trade Secret.

To establish a claim under the VUTSA, Bosch must establish misappropriation of a trade secret, *Audio-Video Grp., LLC* v. *Green*, No. 1:14CV169 (JCC/TCB), 2014 WL 793535, at *4 (E.D. Va. Feb. 26, 2014), either by acquisition of a trade secret by improper means, or by disclosure or use of a trade secret.  *See* Va. Code  Ann. § 59.1-336 (2009); *Audio-Video Grp.*, 2014 WL 793535 at *4.  Improper means "includes theft, bribery,

15

misrepresentation, use of a computer or computer network without authority, breach of a duty or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."   Va. Code § 59.1-336.   But where "the defendant did not utilize 'improper means' to acquire a trade secret, the fact that it possessed a trade secret will not alone constitute misappropriation."   *MicroStrategy Inc.* v. *Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 417 (E.D. Va. 2004).

### 1.      Trico Did Not Misappropriate Bosch's Trade Secrets

In theory, Bosch could have alleged that Trico violated VUTSA by using Bosch's confidential information.   Bosch appears not to be making that argument, and with good reason:  It could not satisfy Rule 11 in so alleging.   Mr. Schmidt returned all of Bosch's information to Bosch before he joined Trico, and Trico does not have and never had that information, as its declarants make clear.

Instead, Bosch proceeds against Trico under a claim of respondeat superior, alleging that Trico is responsible for Mr. Schmidt's acquisition of Bosch confidential information by improper means or disclosure of that information.   (Pl. Mem. at 13.)   That claim fares no better, on the facts or law.   We describe why Mr. Schmidt is not liable under VUTSA in the next section below.   Here we note simply that respondeat superior liability attaches <u>only</u> where the "employee was performing the employer's business and acting within the scope of the employment when the tortious acts were committed."   *Newport News Indus*. v. *Dynamic Testing, Inc.*, 130 F. Supp. 2d 745, 750 (E.D. Va. 2001) (quoting *Giant of Maryland, Inc.* v. *Enger*, 515 S.E.2d 111, 112 (Va. 1999)).   Trico did not employ Mr. Schmidt on January 16th or January 27th, the dates when he downloaded the files.   He returned those files on February 8th, before he started at Trico.   Bosch's sole case, *Physicians Interactive* v. *Lathian Sys., Inc.*, involved misappropriation by an active employee of the defendant.

No. CA 03-1193-A, 2003 WL 23018270, at *10 (E.D. Va. Dec. 5, 2003).   That case just

confirms why Bosch is not likely to succeed—indeed, why Bosch cannot succeed as a matter

of law—on the claim it asserts against Trico.

## 2.   Mr. Schmidt Did Not Misappropriate Bosch's Trade Secrets

Bosch rests its claim of misappropriation in part on the theory that Mr.

Schmidt downloaded documents "without authorization" and "secretly copied the files to his

unauthorized External Hard Drive" on the date of his resignation.   (Pl. Mem. at 13.)   It

provides absolutely no evidence to support this charge.   It identifies no server that he accessed

wrongly, no password that he faked or improperly obtained, no file that he was not allowed to

have.   That failure is fatal, but it is made even worse by Mr. Schmidt's testimony that he had

permission to access these files, that he used them in the course of his work at Bosch, that his

motivation was to assist his successor, and that he used only his own credentials and did not

improperly access any electronic file or folder.   (Schmidt Decl. ¶¶ 10–11.)   As he testifies, "I

have never circumvented computer security measures at Bosch or anywhere else.   I would not

know how to do that.   Even if I did have that knowledge, it would be wrong and I would not

do it."   (*Id.* ¶ 12.)

Nor was the hard drive to which he copied the documents unauthorized.   To

the contrary, the hard drive was purchased with Bosch's authorization, paid for by Bosch, and

used by Mr. Schmidt for years within the scope of his employment.   (*Id.* ¶ 18.)   There also is

nothing improper about the fact that Mr. Schmidt copied the data on the date of his

resignation.   As discussed above, he copied the data in order to provide it to his manager and

successor, Mr. Schroeter, to assist Mr. Schroeter in taking over his accounts.   (*Id.* ¶ 24.)

Bosch also contends that Mr. Schmidt used or divulged the documents

following his employment by Trico.   (Pl. Mem. at 13.)   There is no evidence of this, at all.

There is overwhelming contrary evidence, establishing without contradiction that Mr. Schmidt returned the hard drive to Bosch on February 8, 2014, and did not access or copy, much less disseminate or use, any documents he downloaded from Bosch at any time after leaving Bosch.   (Schmidt Decl. ¶ 5.)   The evidence collected by Trico shows that the documents are not, and never have been, possessed, used or disclosed by anyone at Trico:

- Trico has conducted a global search of its email archives and servers—including all network and personal drives used by all Trico personnel—for the files identified by Bosch's forensic expert.  (Willick Decl. ¶¶ 6–7.)  The searches returned no hits.  (*Id.* ¶ 10.)

- The five key members of Trico's sales management team, who collectively oversee the particular strategies and cover the specific customer accounts complained about by Bosch, have all submitted declarations.  (Stempien Decl. ¶¶ 4, 6; Beecroft Decl. ¶¶ 2, 14; Croston Decl. ¶¶ 4, 6; Conroy Decl. ¶¶ 4, 7; Orlando Decl. ¶¶ 4, 6.)  Each states categorically that they have not received any confidential Bosch information from Mr. Schmidt in any form, either directly or indirectly, have not used any such information, and do not know of anyone who has done so.  (*Id.*)

- Trico has searched Mr. Schmidt's Trico-issued computers and USB drives, and those of the sales-management declarants, for the files identified by Bosch's forensic expert.  (Willick Decl. ¶¶ 12–16.)  The searches returned no hits.  (*Id.*)

Bosch thus fails to make any showing, much less the clear showing required to prevail on its motion, that it is likely to succeed at trial on its VUTSA claims against Mr. Schmidt.   The cases on which it relies all involve what is missing here: overwhelming evidence (here, any evidence at all) of misappropriation.   *See, e.g., Audio-Video Group*, 2014 WL 793535, at *4.   Those cases just confirm why Bosch has not shown a likelihood of success on its VUTSA claim.

### B.  Bosch Is Not Likely to Succeed on its Breach of Contract Claim <u>Because It Has Not Shown a Contract or a Breach Thereof</u>

To prevail on a claim for breach of contract, a plaintiff must establish "(1) a legally enforceable obligation, (2) the defendant's material breach of that obligation, and (3) damage to the plaintiff caused by the breach of that obligation."  *Vienna Metro LLC* v. *Pulte*

*Home Corp.*, 786 F. Supp. 2d 1076, 1086 (E.D. Va. 2011).  Bosch has not shown it is likely to prove any of these elements, much less all three of them.

Bosch's theory rests on a supposed contractual obligation on the part of its employees to use confidential information only on a need-to-know basis.  Bosch alleges that such contracts exist, and it purports in its Complaint to quote them.  Bosch has not actually provided any of those contracts to the Court, however, and there is at least some reason to doubt their existence.  Bosch quotes what it says is a contractual obligation on Mr. Schmidt's part "only to use Bosch's Confidential Information on a need to know basis for the purpose of benefiting [Bosch.]"  (Cplt. ¶ 24.)  The confidentiality agreements that Bosch sent to Mr. Schmidt with its February 5, 2014 letter, which Mr. Schmidt signed in 2002 and 2004, contain no such provision.  (Klunder Ex. 11.)  If there is a later contract that does contain that language, one that Mr. Schmidt signed, Bosch has not provided it to Mr. Schmidt or to the Court.

Mr. Schmidt's defense, however, is not a technical one, nor is Bosch's failure merely one of pleading.  Even assuming Mr. Schmidt had a contractual obligation to use Bosch's confidential information only on a "need-to-know" basis, Bosch fails to show it is likely to succeed in proving that Mr. Schmidt breached any such obligation.  As discussed above, the evidence shows that Mr. Schmidt had user access rights to the files that are the subject of Bosch's complaint, and that he accessed and copied those documents for business purposes for the benefit of Bosch.  There is absolutely no contrary evidence, much less sufficient evidence to make out a probability of success.

Nor can Bosch establish its likelihood of proving injury.  Even if it could prove that Mr. Schmidt improperly downloaded or accessed files in breach of a contractual obligation—which it cannot do—there is no evidence that this harmed Bosch in any way.

Mr. Schmidt returned all of the files to Bosch on February 8th, before he joined Trico.  He never gave or shared the files to Trico, or even accessed them after he left Bosch.  Bosch has no damages.

### C.    Bosch Has Not Tried to Show, and Cannot Show, a Likelihood of Success on its CFAA Claim

Bosch relegates its First Cause of Action, for violation of the CFAA, to a footnote.  That speaks volumes about this case, given that the CFAA is the lynchpin of federal jurisdiction here.  Bosch asserts that claim against Mr. Schmidt, and asserts pendent state-law claims against Mr. Schmidt and Trico, a non-diverse party.  (Cplt. ¶ 9.)  Given that 28 U.S.C. § 1367(c)(2) permits this Court to decline supplemental jurisdiction over a state law claim if it "substantially predominates over the claim . . . over which the district court has original jurisdiction," Bosch's abandonment of its CFAA claim on this motion is significant.  *See Heidelberg USA, Inc.* v. *TD Global Grp., LLC*, No. CIV. 06-10148, 2006 WL 177318 (E.D. Mich. Jan. 23, 2006) (retaining jurisdiction over CFAA claim, but declining to exercise supplemental jurisdiction over state law trade secret and breach of fiduciary duty claims).

Bosch ignores its CFAA claim with good reason.  The CFAA is "primarily a criminal statute designed to combat hacking." *WEC Carolina Energy Solutions LLC* v. *Miller*, 687 F.3d 199, 201 (4th Cir. 2012).  Bosch wants to turn that statute into a basis to sue an employee in federal court for misusing documents.  The Fourth Circuit has rejected this: "[W]e are unwilling to contravene Congress's intent by transforming a statute meant to target hackers into a vehicle for imputing liability to workers who access computers or information in bad faith, or who disregard a use policy, choosing instead to limit such liability to individuals who access computers without authorization or who obtain or alter information beyond the bounds of their authorized access." *Id*. at 207.

Bosch tries to sidestep this deficiency by alleging, on "information and belief," that Mr. Schmidt "circumvented electronic barriers" by "obtaining information and files that were located on secured network servers and to which Schmidt did not have authorized access." (Cplt. ¶ 43). There is no further detail, just the "labels and conclusions" and "naked assertion[s]" devoid of "further factual enhancement" rejected by *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007) and *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009).

And the deficiencies in Bosch's CFAA claim extend beyond the pleadings to the evidence: As discussed above, Mr. Schmidt downloaded the files from folders for which he understood he was an authorized user, using his own login credentials, and did not improperly obtain authorization to access them or circumvent any electronic barriers or other computer security measures. (Schmidt Decl. ¶ 12.) At worst, he is alleged to have used those documents for a purpose Bosch does not like. That is not a CFAA claim. "[W]here an employee uses his own username and password to access the information and then puts it to an impermissible use, his 'manner' of access remains valid." *WEC Carolina Energy Solutions*, 687 F.3d at 205.

The failure of Bosch's CFAA claim threatens subject matter jurisdiction. For present purposes, it affords no basis to enter temporary or preliminary injunctive relief.

## II.    Irreparable Harm:  Bosch Has Not Shown and Cannot Show That Trico Has Any of Bosch's Confidential Information

To obtain a preliminary injunction or temporary restraining order, Bosch must make a "clear showing that it is likely to be irreparably harmed absent preliminary relief." *UBS Fin. Servs. Inc.*, 880 F. Supp. 2d at 733 (quoting *Real Truth About Obama, Inc*. v. *Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir.2009)). The standard for irreparable harm is strict. Where, as here, "there is no proof of harm to the plaintiffs, let alone 'irreparable harm,'" preliminary relief must be denied. *Harvey* v. *Showalter*, No. 3:12-CV-00650-JAG,

2012 WL 5449731, at *2 (E.D. Va. Nov. 7, 2012).  A preliminary injunction also is inappropriate where irreparable harm is only a mere possibility.  *BP Products N. Am. Inc*. v. *Southside Oil*, *L.L.C*., No. 3:13-CV-718-JAG, 2013 WL 6493598, at *4 (E.D. Va. Dec. 10, 2013).

   Bosch rests its claim of imminent and irreparable harm on the allegations that Mr. Schmidt and Trico possess Bosch confidential information, that they "will have the benefit of that information to solicit business away from Bosch," and that "Bosch will continue to lose business and customer goodwill" unless defendants are enjoined from "from any further disclosure and use of Bosch's trade secret information."  (Pl. Mem. at 8.)  Bosch has not shown any evidence of this.  All of the evidence, instead, shows that neither Mr. Schmidt nor Trico possesses Bosch confidential information, that Mr. Schmidt has not possessed or used or disclosed that information since he left Bosch, and that Trico has never done so.  Bosch has to make a clear showing.  It has made no showing at all.

   Bosch also has a significant laches problem.  Since an application for a preliminary injunction is based upon an urgent need to protect a plaintiff's rights, "a long delay in seeking relief indicates that speedy action is not required."  *Quince Orchard Valley Citizens Ass'n* v. *Hodel*, 872 F.2d 75, 79–80 (4th Cir. 1989) (internal citations and quotations omitted).  As a consequence, although "delay in seeking enforcement of those rights may not warrant the denial of ultimate relief, it may 'standing alone, . . . preclude the granting of preliminary . . . relief.'" *Software Testing Solutions, Inc*. v. *United States*, 58 Fed. Cl. 533, 537 (Fed. Cl. 2003) (quoting *Majorica S.A.* v. *R.H. Macy & Co., Inc*., 762 F.2d 7, 8 (2d Cir.1985)).  Here, Bosch threatened Mr. Schmidt about possible misappropriation of confidential Bosch information as long ago as February 5, 2014.  Yet Bosch did not undertake a forensic examination of Mr. Schmidt's computer until April 1, 2014, at the earliest.

(Fannon Decl. ¶¶ 4, 6(a).)  And when Bosch learned from that examination that Mr. Schmidt had downloaded files to an external hard drive, it either made no inquiries of the Human Resources representative responsible for handling the return of Bosch property by Mr. Schmidt or received inaccurate information from her.   Moreover, while apparently believing (incorrectly) that Mr. Schmidt had retained the hard drive, Bosch did not mention it to him or to Trico—much less demand its return—until May 16, 2014.  And after expiration of the parties' one-week standstill agreement on May 23, 2014, Bosch waited another two weeks before seeking the extraordinary and immediate relief it now hopes to obtain.

That relaxed pace is consistent with Bosch's hunt for settlement leverage in the Patent Case, but it is inconsistent with protestations of imminent and irreparable injury.  *See, e.g., Lydo Enterprises* v. *City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (preliminary injunction was an abuse of discretion where, *inter alia*, plaintiff waited four months to bring suit).

**III.    Balance of the Equities: Bosch's Application Could Put Mr. Schmidt Out of Work, Harm Trico's Business, and Give Bosch an Unwarranted Competitive Advantage**

Even if Bosch could show that it would be exposed to some likelihood of irreparable harm absent preliminary relief, that harm is grossly outweighed by the substantial and certain injury that defendants will suffer if Bosch's proposed order is granted.   In particular, the proposed order would enjoin Mr. Schmidt from "engaging in any activity relating to the sale of wiper blades to" the principal customer accounts serviced by Trico, and enjoin Trico from employing Schmidt in connection with such activities.  The consequences of such an injunction are severe and entirely unwarranted by any evidence Bosch has submitted.

If the proposed TRO is entered, Trico will be immediately harmed by the inability to employ Mr. Schmidt for the specific tasks for which he has been hired.  The harm to Trico will be further exacerbated by the fact that Mr. Schmidt has developed relationships with and provided personal services to many of Trico's customers during the nearly four months that he has been employed at Trico.  (Stempien Decl. ¶ 16.)[3]

The effect of the requested TRO would be to subject Mr. Schmidt to a non-compete agreement for which Bosch never bargained and to which it is not entitled.  *See Audio-Video Grp., LLC*, 2014 WL 793535, at *6 (denying TRO that would prevent defendant from providing services to customers of former employer because "In essence, Plaintiff seeks to enforce a non-solicitation agreement that does not exist.")  Worse even than Bosch's attempt to create a non-competition agreement through litigation is its attempt to use this whole lawsuit to get settlement leverage in the Patent Case.  This case has publicly embarrassed Mr. Schmidt based on false accusations.  Bosch has not acted equitably.

The authorities Bosch cites show only why its motion should be denied.  In *Title Trading Servs. USA, Inc.* v. *Kundu*, the court enjoined the defendant's use of specific, allegedly misappropriated proprietary technology, finding that such injunction would not harm the defendant's legitimate business activities.  No. 3:14-CV-225-RJC-DCK, 2014 WL

---

[3]  Bosch's proposed temporary restraining order seeks to restrain Mr. Schmidt "and anyone acting in concert or participation with Schmidt."  Read literally, that might include Trico.  That reading is inconsistent with the narrower relief actually sought against Trico, and Bosch has not made any argument about why an injunction should bar Trico (aside from Mr. Schmidt) from having dealings with its customers.

To be clear, however, if that is the intent of the "acting in concert" language, that request is staggeringly overbroad and unreasonable. As Mr. Stempien testifies, well over 95% of Trico's annual aftermarket revenue is derived from the sales of wiper blades, and each of Trico's 2,366 employees world-wide are in some way engaged in activity related to the sale of wiper blades.  (Stempien Decl. ¶ 18.)  In addition, sales to the twelve customers identified in the Proposed TRO account for well over 75% of Trico's aftermarket wiper blade sales.  (*Id.* ¶ 19.)  To read "acting in concert" with Mr. Schmidt to include all of Trico would have devastating consequences for Trico while the order is in place.  We do not understand Bosch to be seeking this relief, but the ambiguity in its proposed order requires response.

1765128, at \*4 (W.D.N.C. May 2, 2014).  By contrast, Bosch seeks not merely to enjoin the use of the allegedly misappropriated information, but to restrain Mr. Schmidt from any activities relating to wiper blades in connection with Trico's principal accounts.   Bosch's other cases concern the enforcement of non-competition and non-solicitation agreements, where the courts found that the defendants could not complain about the harm from obligations for which the employees had bargained.  *Home Funding Grp., LLC* v. *Myers*, No. 1:06-cv-1400 (JCC), 2006 WL 6847953, at \*2 (E.D. Va. Dec. 14, 2006); *Fidelity Global Brokerage Grp., Inc.* v. *Gray*, No. 1:10-cv-1255, 2010 WL 4646039, at \*4 (E.D. Va. Nov. 9, 2010); *Ancora Capital & Mgmt. Grp., LLC* v. *Gray*, 55 Fed. App'x. 111, 114 (4th Cir. 2003); *Ciena Corp.* v. *Jarrard,* 203 F.3d 312, 323 (4th Cir. 2000).

Mr. Schmidt does not have a non-competition agreement.  He is free to work for Trico.  He has not provided any confidential Bosch information to Trico.  Bosch faces no harm, cannot succeed on the merits, and cannot cloak itself in equity.

## IV.     The Public Interest:  Any Public Interest Here Favors Mr. Schmidt and Trico

Because preliminary relief is an "extraordinary remedy," Bosch must establish that the requested relief is in the public interest.  *Calvary Christian Ctr.* v. *City of Fredericksburg*, 800 F. Supp. 2d 760, 776 (E.D. Va. 2011).  This is not an injunction about a merger of a public company, the creation or demolition of a monument, or some other public work.  If there is any public interest here at all, it is simply in not enjoining people from conducting their business on the basis of false allegations lacking any evidentiary support.

## V.      Mandatory Relief:  Bosch's Request for Mandatory Relief Should be Denied

Bosch asks Trico, a competitor, to copy its files and servers so that Bosch's expert can review the communications Trico has had with, prices it has offered to, and analyses it has done of the very customers for whom Bosch and Trico compete.  That would

be overbroad and unworkable even if there were evidence that Mr. Schmidt had provided Bosch confidential information to Trico.  But here there is no evidence that he did so, and overwhelming evidence that he did not.  To require Trico to freeze its computers and servers, make a forensic image of its files, and hand those files over to Bosch's expert would do nothing other than give Bosch a competitive advantage—precisely the risk that it complains, wrongly, that Mr. Schmidt and Trico pose to Bosch.

Trico has already done the forensic work to prove that Mr. Schmidt gave Trico no confidential information from Bosch.  That outcome makes sense, since Mr. Schmidt returned all of his Bosch files to Bosch before even joining Trico.  There is no need, and no basis, to order an invasive review of Trico's files by a competitor.

## Conclusion

For the reasons set forth above and in the accompanying declarations, Bosch cannot carry its heavy burden of showing that it is entitled to the drastic remedy of a temporary restraining order, or to a preliminary injunction.   Accordingly, Defendants respectfully request that this Court deny Bosch's application in its entirety.

Dated:  Richmond, Virginia
          June 9, 2014

                                    Respectfully submitted,

                                    WILLIAM C. SCHMIDT and TRICO PRODUCTS
                                    CORPORATION


                                      /s/  Rodney A. Satterwhite
                                    Rodney A. Satterwhite (VSB #32907)
                                    rsatterwhite@mcguirewoods.com
                                    Edward M. Eakin, III (VSB #70964)
                                    jeakin@mcguirewoods.com
                                    MCGUIRE WOODS LLP
                                    One James Center
                                    901 East Cary Street
                                    Richmond, Virginia  23219
                                    Phone: (804) 775-1000
                                    Fax: 804-698-2163

                                    Daniel J. Leffell (*Pro Hac Vice*)
                                    dleffell@paulweiss.com
                                    Michael Klunder (*Pro Hac Vice*)
                                    mklunder@paulweiss.com
                                    Leslie Gordon Fagen (*Pro Hac Vice to be Filed*)
                                    Eric Alan Stone (*Pro Hac Vice to be Filed*)
                                    Paul, Weiss, Rifkind, Wharton & Garrison LLP
                                    1285 Avenue of the Americas
                                    New York, New York  10019-6064
                                    Phone:  (212) 373-3000
                                    Fax:  (212) 492-0218


                                    *Attorneys for Defendants*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of June, 2014, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Kimberly L. Taylor VSB #29823
ktaylor@kbbplc.com
KEPLEY, BROSCIOUS & BIGGS, PLC
2221 Pump Road
Richmond, VA  23233
Phone:  (804) 741-0400
Fax:  (804) 741-6175

Stephen J. O'Neil
Stephen.oneil@klgates.com
Amy S. Dolgin
Amy.dolgin@klgates.com
K&L GATES LLP
70 W. Madison Street, Ste. 3100
Chicago, Illinois  60602
Phone:  (312) 372-1121
Fax:  (312) 827-8000

Douglas W. Britt
Douglas.britt@klgates.com
K&L GATES LLP
4350 Lassiter at North Hills Avenue, Suite 3
Raleigh, North Carolina 27609
Phone:  (919) 743-7300
Fax:  (919) 743-7358

*Attorneys for Plaintiff*

  /s/  Rodney A. Satterwhite
Rodney A. Satterwhite (VSB #32907)
MCGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia  23219
Phone: (804) 775-1098
Fax: 804-698-2163

*Attorney for Defendants*

28